United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MALICO, INC.,

        Plaintiff,

    v.

COOLER MASTER USA, INC., and LSI
LOGIC CORPORATION,

        Defendants.

_____/

No. C 11-04537 RS

**CLAIM CONSTRUCTION ORDER**

## I. INTRODUCTION

Plaintiffs Malico, Inc. alleges defendants Cooler Master USA, Inc. and LSI Logic Corporation infringe U.S. Patent No. 6,476,484 ("the '484 patent"). Pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), and the Patent Local Rules, the parties have identified one claim term, "positioning columns," for construction by the Court.[1] In consideration of the briefing, the arguments presented at the hearing, and for all the reasons set forth herein, "positioning columns" is construed as: "material that aligns the retaining device and the heat dissipater, preventing movement."

## II. BACKGROUND

The '484 patent is entitled, "Heat Sink Dissipator for Adapting to Thickness Change of Combination of a CPU and a CPU Carrier," and is generally directed to claiming a "heat sink dissipater," a small piece of computer hardware which abuts and cools the central processor unit

---

[1] The parties stipulated to constructions (or plain meaning) for a number of other terms originally in dispute. *See* Dkt. No. 51.

United States District Court
For the Northern District of California

(CPU).  By way of background, according to the '484 patent, "a CPU assembly normally has a CPU mounted on a PC board and a main board securely engaged with the PC board."  '484 patent, col. 1, ll. 17-19.  A "conventional heat dissipater" is mounted on the CPU with "a retaining device" with "barbs" that secure the dissipater and CPU assembly to the PC board.  *See id.* at fig. 1; col. 1, ll. 35-37.  The retaining device also features "resilient legs" with "bents" which extend into the dissipater's "fins" to "engage the top face of the CPU to abut the CPU to the PC board."  *Id.* at fig. 1; col. 1, ll.

The alleged invention in this case is a retaining device and heat dissipater configured to accommodate a CPU assembly whether or not it includes a PC board, notwithstanding that omitting the PC board varies the thickness of the overall assembly.  As the '484 patent explains, "[c]hanging the thickness of the combination of the CPU assembly often means a new retaining device or a new heat dissipater, which is quite a waste in cost."  *Id.* at col. 1, ll. 43-46.  The alleged invention achieves this adaptation by employing "multiple pads integrally formed on the heat sink dissipater so that when the thickness of the combination of the CPU and the CPU carrier is reduced [by omitting the PC board], the bents of the resilient legs can still engage the pads to securely fix the heat sink dissipater onto the CPU."  *Id.* at fig. 3; col. 1, ll. 43-58.  To achieve the appropriate thickness, the rectangular assembly is rotated 90 degrees.  Similarly, by including "multiple recesses integrally formed on the heat dissipater … the bents of the resilient legs can still engage bottom faces defining the recesses to securely fix the dissipater onto the CPU " when the assembly's thickness is increased.  *Id.* at fig. 4; col. 1, ll. 59-65.

The '484 patent's first claim, directed to the assembly that includes "pads" reads:

1.   A heat sink dissipater, comprising:
    a retaining device having a pair of position columns formed on first two opposite sides, a pair of retaining edges formed on second two opposite sides, and a plurality of resilient legs extending inwards from said first or second two opposite sides, said retaining edges each being formed with a barb and said resilient legs each having a bent;
    a heat dissipater having a plurality of fins formed on a top surface and a plurality of a gaps between said fins, said resilient legs failing [sic[2]] into said gaps when said

---

[2] Defendants argue that "failing," which appears in the claims language, should be adopted, however, Malico has shown from the file history that the substitution of "failing" for "falling" was a

retaining device is positioned on said heat dissipater in a first orientation or a second orientation orthogonal to said first orientation; and

plurality of pads formed between fins on said top surface of said heat dissipater; wherein the bent of each resilient leg is placed on a pad when said retaining device is positioned on said heat dissipater in said first orientation, and each resilient leg is placed directly on said top surface when said retaining device is positioned on said heat dissipater in said second orientation.

*Id.* at col. 3, ll. 20-col. 4, ll. 8.  The patent's second (and final) claim closely resembles the first, but is directed to a heat dissipater assembly with "recesses."  *Id.* at col. 4, ll. 9-31.  Figures 3 and 4 of the '484 patent disclose the preferred embodiments of the alleged invention.

### III. LEGAL STANDARD

Claim construction is a question of law to be determined by the Court.  *Markman*, 52 F.3d at 979.  "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).  Accordingly, a claim should be construed in a manner that "most naturally aligns with the patent's description of the invention."  *Id.*  Once the proper meaning of a term used in a claim has been determined, that term must have the same meaning for all claims in which it appears.  *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002).

The first step in claim construction is to look to the language of the claims themselves.  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  A disputed claim term should be construed in a manner consistent with its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Phillips*, 415 F.3d at 1312-13.  The ordinary and customary meaning of a claim term may be determined solely by viewing the term within the context of the claim's overall language.  *See id.* at 1314 ("[T]he use of a

typo by the Patent & Trademark Office (PTO).  *See* Pl.'s Reply Br. at 11:21-12:11.  The same is true of "railing," which appears in claim 2.  *Id.* at 13:1-13.

United States District Court
For the Northern District of California

term within the claim provides a firm basis for construing the term."). Additionally, the use of the term in other claims may provide guidance regarding its proper construction. *Id.* ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.").

A claim should also be construed in a manner that is consistent with the patent's specification. *See Markman*, 52 F.3d at 979 ("Claims must be read in view of the specification, of which they are a part."). Typically the specification is the best guide for construing the claims. *See Phillips*, 415 F.3d at 1315 ("The specification is . . . the primary basis for construing the claims."); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."). In limited circumstances, the specification may be used to narrow the meaning of a claim term that otherwise would appear to be susceptible to a broader reading. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); *Phillips*, 415 F.3d at 1316. Precedent forbids, however, a construction of claim terms that imposes limitations not found in the claims or supported by an unambiguous restriction in the specification or prosecution history. *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("[A] court may not import limitations from the written description into the claims."); *Comark Commc'ns., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("[W]hile . . . claims are to be interpreted in light of the specification, it does not follow that limitations from the specification may be read into the claims."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) ("It is the *claims* that measure the invention.") (emphasis in original). A final source of intrinsic evidence is the prosecution record and any statements made by the patentee to the United States Patent and Trademark Office (PTO) regarding the scope of the invention. *See Markman*, 52 F.3d at 980. Here, however, none of the parties rely on the file wrapper.

The court also may consider extrinsic evidence, such as dictionaries or technical treatises, especially if such sources are "helpful in determining 'the true meaning of language used in the patent claims.'" *Phillips*, 415 F.3d at 1318 (quoting *Markman*, 52 F.3d at 980). Ultimately, while

1   extrinsic evidence may aid the claim construction analysis, it cannot be used to contradict the plain

2   and ordinary meaning of a claim term as defined within the intrinsic record. *Phillips*, 415 F.3d at

3   1322-23.

4                                              IV. DISCUSSION

5           The parties identify "positioning columns" as the only significant, disputed term to be

6   construed. *See* Patent L.R. 4-3.[3]  It appears in the first lines of the first and second claims. *See* '484

7   patent, col. 3, ll. 20-21 ("a retaining device having a pair of positioning columns formed on first two

8   opposite sides"), *and* col. 4, ll. 10-11 (same).  Malico offers that no construction is necessary, or

9   alternatively suggests the term be construed to mean "material that helps align the retaining device

10  and the heat dissipater."  Defendants propose, "structures that abut side faces of the heat dissipater

11  and the CPU to prevent movement of CPU and heat dissipater."

12          The dispute focuses, in the first instance, on defendant's suggestion that the position

13  columns must "abut" the CPU, or CPU assembly.  Defendants also take issue with Malico's

14  construction to the extent it implies that the purpose of the positioning columns is to "align the

15  retaining device and the heat dissipater."  According to defendants, the purpose of the positioning

16  columns is "to prevent movement, not to help 'align' the retaining device and the heat dissipater."

17  Defs.' Opp'n at 9:25-27.  The specification discloses that, even if the thickness of the overall CPU

18  assembly is varied, "[s]till, the positioning columns are able to abut side faces of the heat sink

19  dissipater and the CPU to avoid the movement of the CPU and the heat sink dissipater when the

20  installation of the heat sink dissipater and the CPU is finished." '484 patent, col. 2, ll. 51-55.

21          Malico insists the specification teaches that the retaining device may abut the CPU, as in

22  Figure 2, but need not, as in Figure 1.  Indeed, Figures 1 and 3A appear to show a gap in space

23  between the CPU and the placement of the positioning columns.  Given the figures and the language

24  quoted above, and because the specification is at least ambiguous on this point, it would be

25  inappropriate to import an "abutment" limitation into the claims. *Laitram Corp.*, 163 F.3d at 1347.

26  As for defendants' contentions regarding "alignment," while it is true that precise term does not

27

28  _____
    [3] This Order is issued in conjunction with a stipulation construing eight other initially disputed
    terms.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  appear in the patent, it is practically synonymous with the term "positioning."  Defendants' further

2  argument, that "the positioning columns effectively position the retaining device in a plane that is

3  not 'aligned' with the heat dissipater since the retaining device and the heat dissipater are positioned

4  in geometric planes that are relatively perpendicular to each other," greatly overcomplicates matters.

5  Defs.' Opp'n at 10:15-19.

6          Each side can claim some justification for its position.  Functionally, the retaining device

7  aligns the heat dissipater with the CPU in a manner that prevents movement.  While it is quite

8  implausible to say that the positioning columns do not "align" the heat dissipater and the CPU, as

9  defendants maintain, they are correct that the specification and the structure of the claimed device

10  indicate that the positioning columns orient an assembly that is locked in place.  In other words,

11  whether the columns "align" the assembly or "prevent movement" is largely a semantic debate –

12  both are true.  Arguably, no construction is necessary at all, given that neither party has adduced

13  evidence to show a specialized meaning of the term "positioning."  Given the parties apparent

14  disagreement as to the meaning of that word in this context, however, the dispute is best resolved as

15  a matter of law on the current record, for the jury's sake.  The term "positioning columns" is

16  therefore construed to mean: "material that aligns the retaining device and the heat dissipater,

17  preventing movement."

18                                    V. CONCLUSION

19          As set forth above, "positioning columns" is construed as, "material that aligns the retaining

20  device and the heat dissipater, preventing movement."

21

22          IT IS SO ORDERED.

23

    Dated:  8/17/12                          _____
24
                                            RICHARD SEEBORG
25                                           UNITED STATES DISTRICT JUDGE

26

27

28