IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MALICO, INC. | No. C 11-4537 RS |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISQUALIFY DEFENDANTS' COUNSEL** |
| COOLER MASTER, INC. and LSI LOGIC CORP., | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff Malico, Inc. moves to disqualify Alston & Bird, counsel for defendants Cooler Master, Inc. and LSI Logic Corp. from continuing to represent them in this case. A potential conflict of interest regarding Alston & Bird's representation came to Malico's attention during a deposition and has ground this case to a halt.[1] In order to resolve the issue quickly, the parties have agreed to an expedited briefing schedule on this motion and that it be considered without a hearing pursuant to Civil Local Rule 7-1(b). For the reasons discussed below, the motion is granted.

---

[1] On May 20, the parties filed a stipulation informing that Court that an issue had arisen during a deposition preventing that deposition, the litigation, and any settlement discussions from continuing. They stipulated to an expedited briefing schedule to resolve this issue, under which plaintiff Malico, Inc. would file a three page motion within one day, defendants Cooler Master, Inc. and LSI Logic Corp. would file three page opposition two days later, and the Court would decide the motion without a hearing. Pursuant to the stipulation, the Court entered an order setting the agreed-to briefing schedule.

## II. BACKGROUND

This case was filed in September of 2011. Since then, defendants have been represented by a number of law firms. Their current counsel, Alston & Bird, appeared on behalf of Cooler Master and LSI on December 14, 2012, and January 18, 2013, respectively. On Thursday, April 25, 2013, Alston & Bird deposed Robert Liang, named inventor of the patent asserted in this patent infringement action (United States Patent Number 6,476,484 (the '484 patent)) as well as substantially all of Malico's patents. Alston & Bird's line of questioning, focused on the propriety of Liang's inventorship, prompted Malico's counsel to investigate records on the website of the United States Patent and Trademark Office (PTO), at which point he discovered that defense counsel Alston & Bird had represented his own client, Malico, in the prosecution of at least two of Malico's patents. Malico was never informed by Alston & Bird of this potential conflict of interest, nor asked to waive it, in writing or otherwise. Upon that discovery, Malico's counsel suspended the deposition.

Subsequent investigation by both Alston & Bird and Malico has revealed the following undisputed facts about Alston & Bird's representation of Malico: Alston & Bird was hired by Malico's Taiwan-based patent law firm, Deep & Far, as early as May of 2006 to represent Malico with respect to filing in the PTO patent applications prepared primarily by that Taiwanese firm. During that representation, Alston & Bird filed at least two patent applications on behalf of Malico, including one that matured into United States Patent Number 7,307,842. Malico avers that the '842 patent is substantially similar to the '484 patent at issue in this case, referencing it throughout. The PTO currently lists Alston & Bird as the attorney-of-record for the '842 patent.

Defendants' current counsel at Alston & Bird joined the firm at its Silicon Valley office in 2008 and deny having any knowledge of Malico or any work the firm had previously done on its behalf. The firm avers that the representation of Malico occurred through its Charlotte, North Carolina office, principally through an attorney who retired in 2009. The firm's financial records show that they were hired by Deep & Far in 2006. The last bill to Deep & Far regarding the '842 patent is dated November 19, 2007. As for the other patent, the last bill was dated May 12, 2010. Alston & Bird denies knowledge of any bills for work to Malico or patent prosecution activity after

that date. *See* Declaration of Matthew G. Myslajek in support of defendants' opposition to plaintiff's Motion to Disqualify Defendants' Counsel (Myslajek Decl.), Dkt. 82, ¶4.[2] Alston & Bird formally closed its client file for Malico in December of 2012, the same month that it appeared on behalf of Cooler Master in this case.

PTO records identifying Alston & Bird as Malico's counsel indicate that a maintenance fee on the '842 patent was paid as recently as June 16, 2011. *See* Declaration of John Whitaker (Whitaker Decl.), Dkt. 79-1, ¶ 14 & Exs. B & C. Alston & Bird denies having paid that fee on Malico's behalf or having any knowledge of who paid it. *See* Declaration of Kim Shaul in Support of Defendants' Opposition to Plaintiff's Motion to Disqualify Defendants' Counsel (Shaul Decl.), Dkt. 82, ¶¶ 6, 8. Alston & Bird confirmed that the maintenance fee on the '842 patent was not paid through its account with Computer Patent Annuities, its service provider for such tasks, and in fact, that the fee was paid through another service provider with which it does not contract. *Id.* at ¶¶ 7-9. It further avers it has not provided monitoring services for Malico on the '842 patent since January 15, 2008. *Id.* at ¶ 6 & Ex. A. On February 7, 2008, it expressly informed Deep & Far that it would not be responsible for such services or for paying any applicable maintenance fees, and that Deep & Far or Malico would need to make other arrangements for such services. *Id.*

### III.   LEGAL STANDARD

"The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Under Civil Local Rule 11–4(a)(1), all attorneys who practice in the Northern District of California must comply with the standards of professional conduct required of members of the State Bar of California. Accordingly, state law applies in determining matters of disqualification.[3] *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). In California, the

---

[2] Defendants move to file the Myslajek and Saul Declarations, and the exhibits thereto under seal. The documents proposed to be sealed or redacted contain Malico's potentially confidential client information and are therefore entitled to protection under the law as required by Civil Local Rule 79-5 governing the filing of documents under seal. The motion is therefore granted.

[3] The primary legal authorities relied upon by Malico's perfunctory motion to disqualify are North Carolina Rules of Professional Conduct 1.7 and 1.9. Presumably, Malico believes that North Carolina law applies because the lawyers at Alston & Bird who represented it in the prosecution of the '842 patent were located in Charlotte, North Carolina. This conclusion is incorrect for the reasons stated herein.

relevant rule is that a lawyer may not, "without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." Cal. R. Prof'l. Conduct, 3-310(E). "Depending on the circumstances, a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion."[4] *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999) (citations omitted).

"Motions to disqualify counsel are strongly disfavored." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003). For one, motions to disqualify involve "a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility." *Comden v. Superior Court*, 20 Cal. 3d 906, 915 (1978). Moreover, the ethical rules can be used tactically. *See e.g., Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). As a result, "disqualification motions should be subjected to particularly strict judicial scrutiny." *Id.* (quotation and quotation marks omitted). "[D]isqualification is a drastic measure that is generally disfavored and imposed only when absolutely necessary." *Ramirez v. Trans Union, LLC*, No. 12-0632, 2013 WL 1164921, at *2 (N.D. Cal. Mar. 20, 2013). "The moving party, therefore, carries a heavy burden and must satisfy a high standard of proof." *Kelly v. Roker*, No. 11-5822, 2012 WL 851558, at *2 (N.D. Cal. Mar. 13, 2012).

That said, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1428 (1999). "Consequently, the recognizably important right to choose one's counsel must yield to the ethical considerations that embody the moral principles of our judicial process." *Id.* "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process."

---

[4] There is no suggestion of tactical abuse in this case. As Alston & Bird has only recently appeared for defendants, their disqualification would not appear to prejudice their clients, and defendants advance no such prejudice showing.

No. C 11-04537-RS
ORDER

4

*SpeeDee Oil*, 20 Cal.4th at 1146 (citations omitted). "The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel." *Id.* (citation omitted). "The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." *Id.* at 1147 (citation omitted).

"As a result of this duty, lawyers in California cannot simultaneously represent two clients that are adverse to each other, even where the adversity arises in two unrelated matters." *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-3972, 2010 WL 5387920, at *5 (N.D. Cal. Dec. 22, 2010). "[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 284-86 (1994).

By contrast, the disqualification standard in successive representation cases, where the lawyer terminated the representation of the first client before undertaking to represent the second client, is less stringent, requiring that the two matters be substantially related. "Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." *SpeeDee Oil*, 20 Cal. 4th at 1146. In applying this standard, "[c]ourts focus less on the meaning of the words substantial and relationship and look instead at the practical consequences of the attorney's representation of the former client." *Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1454 (1991). "Where the potential conflict is one that arises from the successive representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client confidentiality." *Flatt*, 9 Cal. 4th at 283. "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm." *Id.*

IV.   DISUSSION

Malico initially argues that it was a "current client" of Alston & Bird's at the time the firm agreed to represent defendants in this case. In particular, based on the theory that the firm paid the maintenance fee for the '842 patent in June of 2011, Malico argues that it remained a current client of Alston & Bird because the firm provided it with "long-term docket" services, maintaining docketing responsibility for the patent and sending it periodic reminders "regarding the possible need for further action with respect to [this] otherwise completed matter[]." Or. Formal Ethics Op. No. 2005-146. There are two problems with this argument. First, the record shows that Alston & Bird did not have such long-term docketing obligations on Malico's behalf with respect to the '842 patent: It did not pay the maintenance fee the PTO received for the '842 patent in June 2011, *see* Shaul Decl. at ¶¶6-9, and it expressly disclaimed in writing as early as February 2008 any long-term docketing obligations for the '842 patent, urging Deep & Far to engage its annuity service to complete such work to avoid the patent lapsing. *Id.* Second, even if Alston & Bird had, at one time, taken on such obligations for Malico, Malico's current counsel concedes that Alston & Bird "had closed its open Malico matters in December of 2012." Whitaker Decl. ¶11. As Alston & Bird first appeared in this case on December 14, 2012, it is entirely possible that the firm could have closed its Malico matters prior to that date. Malico has not presented any evidence demonstrating that the firm maintained it as a client concurrent with its representation of defendants. Without proof of concurrent representation, the *per se* rule disqualifying counsel from simultaneous representation of parties adverse to each other does not apply.

Instead, this is a classic case of side-switching: the successive representation of one client followed by another adverse to the first client's interests. In such situations, the substantial relationship test applies. Malico persuasively argues that Alston & Bird's representation of defendants here is substantially related to its former representation of Malico because Alston & Bird formerly represented Malico in prosecuting the '842 patent, which is substantially similar to the '484 patent asserted in this case. Robert Liang is the named inventor of both patents. Malico argues that by questioning the propriety of Liang's inventorship of the '484 patent during his deposition, the position Alston & Bird has taken on behalf of defendants in this case threatens the validity of *all*

of Malico's patents, including the two which it secured for Malico. Malico argues that this conflict necessitates Alston & Bird's disqualification because the firm is in the impossible situation where it must either compromise its loyalty to defendants by declining to advance a defense that would otherwise be available, or it must advance a defense contrary to its former client's interests.

Defendants argue that the conflict here does not necessitate disqualification because Alston & Bird's representation of Malico was extremely limited. Although defendants argue that Malico has offered no evidence about the nature and extent of Alston & Bird's work for it, "[t]he courts of California have recognized the dangers of the swearing matches that would result if they required proof of *actual* knowledge of material confidential information, tear[ing] aside the protective cloak drawn about the lawyer-client relationship." *Elan Transdermal, Ltd v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383, 1388 (N.D. Cal. 1992) (internal quotation omitted). Given the substantial relationship between Alston & Bird's former representation of Malico and its current representation of defendants, Malico need not prove that the firm had exposure to formulation of policy or strategy to support disqualification. Access to such information is presumed, and it is imputed to all of the lawyers at the firm. *See Flatt*, 9 Cal. 4th at 283.

While defendants further argue that the questions asked of Liang are standard and asked of any named inventor of a patent asserted in litigation, this does not absolve Alston & Bird of its ongoing duty of loyalty to its former client. Alston & Bird was apparently aware of this potential conflict when it agreed to represent defendants, as evidenced by their decision finally to close long-inactive Malico matters in the same month it appeared on defendants' behalf in this case. Yet it failed to obtain a written conflict waiver from Malico, which would have obviated the need for this motion, or even to establish an ethical wall preventing the Alston & Bird attorneys representing defendants from accessing Malico's confidential information and from speaking to attorneys at the firm familiar with the Malico representation. The California State Bar Committee on Professional Responsibility has noted that choosing to proceed in such a manner may result in a firm's disqualification, if not professional discipline. Cal. Eth. Op. 1998-152, 1998 WL 37581.

V.   CONCLUSION

Alston & Bird is disqualified from representing defendants in this case.

IT IS SO ORDERED.

Dated:  6/4/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE