1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                         SAN FRANCISCO DIVISION

10

11   MALICO, INC.                        No. C 11-4537 RS

12              Plaintiff,

13       v.                              **ORDER DENYING PLAINTIFF'S**
                                         **MOTION FOR PARTIAL SUMMARY**
                                         **JUDGMENT OF INFRINGEMENT,**
14   COOLER MASTER USA, INC. and LSI     **GRANTING DEFENDANTS'**
     LOGIC CORP.,                        **MOTIONS TO STRIKE AND FOR**
15                                       **SUMMARY JUDGMENT OF**
                                         **INVALIDITY DUE TO**
16              Defendants.              **OBVIOUSNESS, AND GRANTING IN**
     _____/   **PART AND DENYING IN PART**
                                         **DEFENDANTS' MOTION FOR**
17                                       **SUMMARY DETERMINATION OF**
                                         **NO DAMAGES**
18

19                          I.      INTRODUCTION

20        In this action for patent infringement, plaintiff Malico, Inc., avers that defendants Cooler

21   Master USA, Inc. (Cooler Master) and LSI Logic Corp. (LSI) have infringed on its United States

22   Patent Number 6,476,484 (the '484 Patent).  Malico moves for partial summary judgment holding

23   that the accused products infringe the asserted patent.  The motion is based entirely on a comparison

24   of a figure from the '484 Patent to photographs of what Malico contends is an accused product.

25   Defendants move to strike those photographs as inadmissible.  Defendants also move for a summary

26   determination that, regardless of their liability, plaintiff is not entitled to recover any damages.

27   Finally, defendants move for summary judgment on the basis that the '484 Patent is invalid due to

28

*United States District Court*
*For the Northern District of California*

obviousness.  This order addresses each of the motions as well as the associated evidentiary objections.  For the reasons discussed below, Malico's motion for partial summary judgment of infringement is denied, defendants' motions to strike and for summary judgment of invalidity are granted, and defendants' motion for summary determination of no damages is granted in part and denied in part.

## II.    BACKGROUND

Malico first sued Cooler Master for infringement in the Western District of Washington on May 26, 2009.  That case was dismissed for lack of personal jurisdiction.  Malico filed the present action against both Cooler Master and LSI on September 13, 2011.  It accuses Cooler Master product ECB-00101-01-GP (and variants thereof), which have been used as components of various LSI products, of infringing the '484 Patent.  Cooler Master is a wholly-owned subsidiary of a Taiwanese company.  Malico contends it infringed the '484 Patent by importing into, and selling, the accused products in the United States.  LSI allegedly infringed the '484 Patent by being an indirect purchaser of the accused products, which were then incorporated into LSI products made, sold, or used in the United States.

### A.    The Patented Device

The '484 Patent is entitled "Heat Sink Dissipater for Adapting to Thickness Change of Combination of a CPU and a CPU Carrier."  A heat sink is a passive heat exchanger component that cools an electronic device by dissipating heat generated by the device into the surrounding air.  The '484 Patent describes a heat dissipater that can be fixed onto a CPU with a retaining device (also described by the patent), capable of being configured to accommodate CPU assemblies with or without PC boards, even though the presence or absence of the PC board varies the thickness of the CPU assembly to which the heat dissipater must be fixed.  Thus, the "problem" to be solved by the '484 Patent is that typically, adjusting the thickness of the combination of the CPU Assembly may require the added cost of a new heat dissipater.

The heat sink device covered by the '484 Patent accommodates this variation in thickness of the CPU because it can be affixed to it in two orientations.  In the first, the legs protruding into the center of the square frame of the retaining device fall into the gaps between the fins on top of the

United States District Court
For the Northern District of California

1  heat dissipater.  In the second, when the square frame of the retaining device is turned ninety

2  degrees, the legs protruding into the center of it rest higher up, on "pads" between the fins on the

3  heat dissipater.  In both orientations, the bents at the end of the legs securely connect the heat sink

4  dissipater onto the CPU.

5          B.  Prosecution History

6          The original application for the '484 Patent advances broader versions of claims 1 and 2 than

7  what the PTO ultimately allowed.  The original claims read:

8          1. A heat sink dissipater for adapting to thickness change of a combination of a CPU
9          and a CPU carrier, the heat sink dissipater comprising multiple rows and columns of
           fins; and pads integrally formed on opposite sides of a top face of the heat sink
10         dissipater, whereby the heat sink dissipater is able to adapt to a change in thickness
           of the CPU and the CPU carrier.
11
12         2. A heat sink dissipater for adapting to thickness change of a combination of a CPU
           and a CPU carrier, the heat sink dissipater comprising multiple rows and columns of
13         fins; and recesses defined in opposite sides of a top face of the heat sink dissipater,
           whereby the heat sink dissipater is able to adapt to a change in thickness of the CPU
14         and the CPU carrier.

15

16  Declaration of Steven W. Flanders in Support of Defendants' Motion for Summary Judgment of

17  Invalidity (Flanders Invalidity Decl.), Ex. 1 (Original '484 Patent Application), Dkt. 98-3.  The

18  applicant presented the Examiner with the prior art in the form of United States Patent numbers

19  6,243,266 (Lo) 5,421,402 (Lin), and 6,153,932 (Liang), all describing various heat sinks, for

20  consideration alongside the claims of the application.  *See* Carman Decl., Exs. F. (Lin) & G (Lo),

    Dkts. 98-14, -15; Flanders Invalidity Decl., Ex. 5 (Liang), Dkt. 98-7.  The Examiner rejected
21
    original claim 1 as anticipated by Lo, stating "Fig. 1 of Lo '266 shows multiple rows and columns
22
    of fins 34, pegs 40 formed on opposite sides of a top side of heat sink 30, where the heat sink 30, is
23
    able to function with CPU packages of a range of thicknesses."  Flanders Invalidity Decl., Ex. 2
24
    (Feb. 19, 2002 Office Action), Dkt. 98-4 at 2.  The Examiner also rejected original claim 2 for
25
    obviousness over Lo in view of Lin, concluding:
26

27         Fig. 1 and 3 of Lo '266 show a heat sink 30 which is able to work with CPU
           packages of a range of thicknesses comprising multiple rows of fins 34 and recesses
28

57 and 60 on opposites sides of a bottom surface of the heat sink 30, where the heat sink 30 is able to accommodate CPU packages of different sizes.

Figure 2 of Lin '402 shows recesses 44 on top surface of heat sink apparatus 10.

It would have been obvious to one having ordinary skill in the art to form the recesses of Lo '266 on top surface of heat sink rather than on the bottom surface as taught by Lin in order to have better mechanical connectivity.

*Id.* at 3.  In response to these rejections, the applicant cancelled original claims 1 and 2 and added the new claims that eventually issued as claims 1 and 2 of the '484 Patent.  Flanders Invalidity Decl., Ex. 3 (Applicant's May 16, 2002 Response), Dkt. 98-5.

To distinguish the claims over the combination of Lo and Lin, the applicant added limitations that the retaining device is formed with resilient legs, that the heat dissipater is formed with pads or recesses, and that "the bent of each resilient leg is placed on a pad (recess) when said retaining device is positioned on said heat dissipater in a first orientation and each such resilient leg is placed directly on the top surface when said retaining device is positioned on said heat dissipater in a second orientation."  *Id.* at 9.  The applicant explained that "[t]he gist of this invention is to provide a heat sink dissipater with a retaining device and a heat dissipater in such a way that the retaining device and the heat dissipater can accommodate CPU assemblies of different thickness by rotating the retaining device or the heat dissipater 90 degrees when they are secured to a CPU assembly."  *Id.*

The applicant distinguished the new claim language over Lo because there the patented device adapts to different thicknesses by utilizing pairs of locking recesses at different heights above the base.  "Lo never teaches, suggests or anticipates the legs of the instant invention that fall into gaps between fins of a heat dissipater and the placement of the bents of the legs on pads/recesses or the top surface of the heat dissipater in two orthogonal orientations as recited in claims 3 and 4."  *Id.* at 10.

The applicant distinguished the new claim language over the combination of Lo and Lin by stating that while Lin teaches a heat sink apparatus with recesses on the top surface of a heat sink, "the legs and the placement of the bents of the legs on pads or recesses of the instant invention to secure a CPU assembly of different thickness has never been mentioned or suggested."  *Id.*  The

United States District Court

For the Northern District of California

1   applicant argued that Lo and Lin do not disclose legs which fall into gaps between fins to be placed

2   on pads/recesses or the top surface of a heat dissipater and that it would not be logical for a person

3   with ordinary skill in the art to combine Lin and Lo to reach the invention recited in the new claims.

4   *See id.* That is, the key distinguishing element is the addition of resilient legs that fall between the

5   fins.

6        Based on these amendments and arguments, the Examiner issued a notice of allowability.

7   Flanders Invalidity Decl., Ex. 4 (July 15, 2002 Notice of Allowability), Dkt. 98-6.  The Examiner

8   concluded that "prior art failed to show a heat sink retaining device with resilient legs and a heat

9   dissipater formed with pads/recesses and the bent of each resilient leg is placed directly on the top

10  surface when the retaining device is positioned on the heat dissipater in a first orientation and each

11  resilient leg is placed directly on the top surface when the retaining device is positioned on the heat

12  dissipater in a second orientation." *Id.* at 2.

13       The Examiner was not presented with prior art in the form of United States Patent numbers

14  5,276,585 (Smithers) or 5,729,43 (Marwah).  *See* Carman Decl., Ex. C (Smithers), Dkt. 98-11;

15  Carman Decl., Ex. E (Marwah), Dkt. 98-13.  Smithers teaches a clip with parallel edge frames and

16  pockets at each end connected by transverse beams to secure a heat sink with fins between those

17  beams and the surface of the device package.  Marwah teaches a heat sink apparatus with a

18  thermally conductive spacer to accommodate CPU's and IC's of different thicknesses.

19            C.  Fact Discovery

20       The case management scheduling order entered in this case mandated that non-expert

21  discovery be completed by December 10, 2012.  On August 31, 2012, Defendants served their first

22  set of requests for production (RFPs) and interrogatories on Malico.  Among other things, RFPs 6

23  and 13 demanded the production of "All DOCUMENTS CONCERNING any comparison or

24  evaluation of any heat sink device manufactured or sold by PLAINTIFF to any of the ACCUSED

25  PRODUCTS manufactured or sold by the DEFENDANTS" and "All DOCUMENTS

26  CONCERNING any testing or analysis of any products that embody the claims of the PATENT-IN-

27  SUIT."  *See* Declaration of Steven W. Flanders in Support of Defendants' Motion to Strike

28  Inadmissible Evidence in Plaintiff's Motion for Partial Summary Judgment of Infringement

(Flanders Mot. to Strike Decl.), Ex. A (Defendants' First Set of Requests for Production), Dkt. 110-2, at 8, 9.  Malico responded that it would produce any relevant non-privileged documents responsive to these requests for production, and others, including RFPs 34 and 42.  Flanders Mot. to Strike Decl., Ex. C (Plaintiff's Responses to Defendants' First Set of Requests for Production), Dkt. 110-4.  At the end of fact discovery, Plaintiff had only produced 13 documents totaling 163 pages. All produced documents were emails or other correspondence between itself and the defendants. None of the produced documents contained technical evidence supporting plaintiff's infringement case.  Malico did not produce the photographs it includes in its motion for partial summary judgment for infringement, which it characterizes as depicting an accused product.  Nor did it officially produce a specimen of an accused product in response to the written discovery requests.

Malico contends that it produced such a specimen to defendants on at least three occasions: (1) it brought several accused products to an April 20, 2012, settlement conference between the parties, and showed them to defendants in the presence of the settlement judge, (2) it brought an accused product to a tutorial for the Court held on August 6, 2012, where it was presented as a demonstrative (the hearing transcript reflects that the product presented as a demonstrative at the tutorial was a Malico, as opposed to an accused, product), and (3) an email to defendants' counsel stating that "[o]ther documents are available for inspection at any convenient time" thereby making the accused products available for inspection on an ongoing basis.  *See* Declaration of John Whitaker in Support of Malico's Reply in Support of Motion for Partial Summary Judgment (Whitaker Decl.), Ex. D. (Email from John Whitaker to Andrew Shupe et. al, Feb. 3, 2013), Dkt. 119-5.

Finally, Malico states the defendants inspected a specimen of an accused product at the deposition of John Chang, Assistant to the General Manager for Malico, on April 24, 2013. Defendants took the deposition of Chang as Malico's person most knowledgeable in response to their deposition notice pursuant to Federal Rule of Civil Procedure 30(b)(6).  The deposition occurred after the close of fact discovery at Malico's request, in order to allow its corporate deponents to coordinate their travel to the United States with other business.  Malico contends that the very product pictured in the contested photographs was a formal exhibit at that deposition.  The

United States District Court

For the Northern District of California

deposition exhibit, however, is a photograph of the packaging of an LSI SCSI Host Bus Adapter product.  Whitaker Decl., Ex. C (Exhibit 1 to the Deposition of John Chang), Dkt. 119-3.  It is unclear whether that product utilizes the accused Cooler Master heat sink, Malico's own heat sink, or one manufactured by a third party, as a component.

In addition, defendants' interrogatory 3 asked plaintiff to "[p]lease describe with specificity any investigation conducted by you with respect to each claim set forth in your Complaint, including but not limited to the alleged infringement of the Patent-in-suit, including but not limited to the inspection, testing, evaluation, and/or analysis of any ACCUSED PRODUCTS . . . ."  Flanders Mot. to Strike Decl., Ex. B (Defendants' First Set of Interrogatories), Dkt. 110-3.  Malico provided no information in response beyond objecting that the interrogatory "improperly invades the attorney/client privilege and litigation work product doctrine . . . [and] does not call for any information relevant to any issues in this matter."  Flanders Mot. to Strike Decl., Ex. D (Plaintiff's Responses to Defendants' First Set of Interrogatories), Dkt. 110-4.

Malico has produced no evidence in support of its claim for damages either through its initial disclosures under Federal Rule of Civil Procedure 26(a) or thereafter.  In response to an interrogatory propounded upon it by Cooler Master demanding the bases of its claim for damages, Malico stated that the "interrogatory is premature in that Malico's damages investigation is ongoing and deadlines for expert reports have not yet arrived.  Generally stated, Malico submits that its damages calculation shall be computed in accordance with the *Georgia Pacific* factors."  Decl. of Steven Flanders In Support of Defendants Cooler Master and LSI's Motion for Summary Determination of Damages (Flanders Damages Decl.), Ex. H (Plaintiff's Responses to Cooler Master Interrogatories), Dkt. 99-10 at 10.[1]  Malico never supplemented its response.

Malico's own discovery was limited to document requests and eleven interrogatories.  In response to Malico's interrogatories, LSI stated that it ceased using any accused products by March of 2009.  Malico does not dispute the accuracy of that response.  Cooler Master, as reflected in data provided to Dr. Bruce D. Abrahamson, its own damages expert, shows that it imported allegedly

---

[1] Defendants' administrative motion to seal portions of their motion for summary determination of no damages and the exhibits to the Flanders Damages Declaration is granted, as they contain confidential sales information sealable under Civil Local Rule 79-5.  *See* Dkt. 100.

infringing products from 2004 to 2006. Malico engaged in no additional discovery beyond a motion to compel defendants to produce additional evidence, which was denied as untimely. *See* Order Denying Motion to Compel, Dkt. 124.

**D.  Expert Discovery**

The case management scheduling order set deadlines for service of plaintiff's expert reports by February 4, 2013, and defendants' by March 4, 2013. Plaintiff did not serve such expert reports. Defendants timely served a report from their technical expert, Dr. Gregory, opining that the accused products do "not infringe the claims [of the '484 Patent] because, at least, [they] lack[] positioning columns, as defined by the Court's claim construction, i.e. 'material that aligns the retaining device and the heat dissipater, preventing movement.'" Declaration of Steven W. Flanders in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment of Infringement (Flanders Infringement Decl.), Ex. A (Carman Expert Rpt.), Dkt. 112-2 at 6-7. Defendants also timely served an expert report on damages, authored by Dr. Abramson. While finding that Malico is not entitled to any damages, Abramson opines that, even if so, the maximum damages to which plaintiff could possibly be entitled, based on all infringing sales by both defendants, is a reasonable royalty of six percent of $443,015, amounting to $26,580.90. Flanders Damages Decl., Ex. A (Abrahamson Expert Report), Dkt. 99-3. Malico deposed neither of defendants' experts, and expert discovery closed on May 6, 2013.[2]

## III.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of

---

[2] Plaintiff argues that Abrahamson's expert report on damages should be excluded because it relies on defendants' representations that their infringement, if any, ceased in 2009. This objection is premised on a misunderstanding of the role of an expert in litigation. Federal Rule of Evidence 703 specifically states: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." The fact that he relied on material of which he was made aware by defendants, even if Malico believes it to be untrue, is no basis for excluding his opinion. Malico has introduced no admissible evidence to counter LSI's interrogatory response that sales of the accused products ceased in March 2009. Furthermore, Malico's recent motion to compel further discovery on this topic was denied as untimely, so additional admissible evidence on it is unlikely to surface. See Order Denying Plaintiff Malico, Inc.'s Motion to Compel, Dkt. 124.

1    material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. Proc.

2    56(c)(1)(A).  There is no genuine issue of material fact if "after adequate time for discovery and

3    upon motion, [a party] fails to make a showing sufficient to establish the existence of an element

4    essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*,

5    477 U.S. at 322.  This is because "a complete failure of proof concerning an essential element of the

6    . . . party's case necessarily renders all other facts immaterial." *Id.* at 323.  If the movant succeeds in

7    demonstrating the absence of a genuine issue of material fact, the burden then shifts to the

8    nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at

9    322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B).  A genuine issue of material fact is one that could

10   reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the

11   suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The Court must view the

12   evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its

13   favor.  *See id.* at 255.

14                                        IV.      DISUSSION

15          A.  Motion for Partial Summary Judgment of Infringement

16          Malico moves for partial summary judgment that the accused devices infringe the '484

17   Patent.  Although the burden rests with plaintiff to prove infringement, the only evidence it presents

18   in support of its motion are photographs of what it purports to be an accused product.  It compares

19   these photographs to Figure 1 of the '484 Patent arguing that this accused product is the same as the

20   patented device and therefore infringes.[3]  The photographs, however, are not sufficient to support a

21   grant of summary judgment in plaintiff's favor.

22          The technology at issue here is relatively straightforward and understandable; it is essentially

23   two pieces of molded plastic that fit together onto a CPU assembly.  In such a situation, plaintiff is

24   not necessarily required to present expert testimony in support of a finding of infringement, and may

25   theoretically be able to succeed in arguing infringement simply by comparing the accused products

26   to the patent-in-suit.  Summary judgment is not appropriate, however, if the non-moving party is

27   able to raise a question of material fact as to whether the accused products infringe.  Defendants

28   ───────────────────────────────

[3] Defendants have moved to strike the photographs as inadmissible, and for the reasons discussed
below, the motion to strike is granted.

United States District Court
For the Northern District of California

1  have done so here.  They have introduced a report from their technical expert, Dr. Carman, opining

2  that the accused products "do[] not infringe the claims [of the '484 Patent] because, at least, [they]

3  lack[] positioning columns, as defined by the Court's claim construction."  Expert Report of

4  Gregory Carman, Dkt. 112-2 at 6.  Dr. Carman's expert opinion refutes plaintiff's conclusion that

5  the photographs alone it has presented establish infringement.

6      Given that the photographs are *not* admissible for the reasons detailed below, summary

7  judgment must be denied in any event.  Malico has had "adequate time for discovery" and yet "fails

8  to make a showing sufficient to establish" infringement, an issue "on which that party will bear the

9  burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Its motion must fail, therefore, because "a

10  complete failure of proof concerning an essential element of the . . . party's case necessarily renders

11  all other facts immaterial."  *Id.* at 323.  Here, the *only* admissible evidence presented on the

12  infringement issue is Dr. Carman's expert report supporting a determination of noninfringement.

13  The motion for partial summary judgment of infringement is therefore denied.

14      B.  Motion to Strike Photographs

15      Defendants move to strike the photographs Malico introduces in support of its motion for

16  partial summary judgment of infringement, which it argues are of an accused product, on a number

17  of grounds.  Even without addressing all defendants' inadmissibility arguments, the result is clear.

18  The photographs purporting to be of an accused device presented for the first time in Malico's

19  motion for partial summary judgment certainly are responsive to the written discovery that

20  defendants' timely served.  Federal Rule of Civil Procedure 37(c)(1) reads: "If a party fails to

21  provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to

22  use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

23  failure was substantially justified or is harmless."  "This particular subsection . . . is a recognized

24  broadening of the sanctioning power."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

25  1101, 1106 (9th Cir. 2001).  "The Advisory Committee Notes describe it as a 'self-executing,'

26  'automatic' sanction."  *Id.*  Accordingly, "[u]nder Rule 37(c)(1) . . . a court may, sua sponte, exclude

27  evidence that a party failed to disclose under Rules 26(a) or 26(e)."  *Batiz v. Am. Commercial Sec.

28  Servs.*, 776 F. Supp. 1087, 1092 (C.D. Cal. 2011).  Rule 26(e) requires:

No. C 11-04537-RS
ORDER

United States District Court
For the Northern District of California

1         a party who has . . . responded to a[] . . . request for production . . . must
2         supplement or correct its disclosure or response: []in a timely manner if the party
        learns that in some material respect the disclosure or response is incomplete or
3         incorrect, and if the additional or corrective information has not otherwise been made
        known to the other parties during the discovery process or in writing.

4 At oral argument, Malico contended that it did not need to produce the photographs during

5 discovery because they were created only recently when counsel took the images "two days" before

6 filing plaintiff's motion for partial summary judgment of infringement.  Yet, a party's own tardiness

7 in creating a key piece of evidence on which it intends to rely in support of a dispositive motion

8 does not excuse its failure to satisfy its disclosure obligations.  If Malico elected to rely on

9 photographs of an accused product in support of its motion, it should have taken and produced those

10 images during discovery.

11      Furthermore, although Malico represents that the images are of an accused product, they

12 have not been authenticated properly as required by Federal Rule of Evidence 901(a). The

13 challenged photographs are attached as exhibits to the Declaration of John Whitaker in Support of

14 Malico's Motion for Partial Summary Judgment.  That declaration states that the photographs are

15 true and correct pictures of the LSI's 22320-R product, which incorporates an infringing heat sink

16 manufactured by Cooler Master.  *See* Dkt. 103-1.  The declarant further testifies that Malico

17 purchased the depicted product in April of 2012, before the close of fact discovery.  *See id.*  While

18 Malico insists it brought the pictured product to a number of events related to this litigation at which

19 defendants were present, thereby "informally" producing it, plaintiff concedes that it did not

20 produce it in its formal discovery responses and provides no reason for this failure.

21      Nor did Malico ever produce a receipt or other supporting documentation to confirm that the

22 images depict "what [Malico] claims" they are. Fed. R. Evid. 901(a).  Malico advances no

23 indication of when and from whom the product was purchased, or "testimony of a witness with

24 knowledge" that the heat sink pictured is an accused product as opposed to Malico's own device.

25 Fed. R. Civ. Proc. 901(b).  The LSI 22320-R product has been manufactured over the years with

26 heat sinks from a variety of manufacturers, including that belonging to plaintiff.  Other than its

27 counsel's own unadorned statement that the heat sink depicted is an accused product, there is no

28 evidence supporting a conclusion that the pictured device is defendants', as opposed to plaintiff's

1  own, heat sink.  This problem in authenticating the photographs could have been avoided had

2  Malico met its discovery obligations and timely produced the photographs or at least the underlying

3  device.

4         Similarly, the three instances at which Malico contends it presented the device to defendants

5  do not operate as an official and valid production.  Even if the actual device had been produced to

6  defendants, Malico makes no attempt to argue that the images presented in support of its partial

7  motion for summary judgment were themselves produced.  Legally and factually, they were never

8  disclosed.  The burden is on Malico to prove that its nondisclosure was either justified or harmless,

9  *Yeti by Molly, Ltd.*, 259 F.3d at 1107, which it has failed to do.  To the contrary, Malico has

10  conceded that it was in possession of the pictured device long before fact discovery closed.

11  Malico's discovery failure deprived defendants of an opportunity to have their technical expert

12  inspect the device or to investigate its provenance and authenticity.  Pursuant to Rule 37(c)(1),

13  striking the images of a purportedly accused device is warranted as they were presented for the first

14  time in support of plaintiff's motion for partial summary judgment on infringement.

15         C.  Motion for Summary Determination of No Damages

16         Defendants move for a summary determination that regardless of whether they are liable for

17  infringement of the '484 Patent, Malico is not entitled to any damages.  Generally, a patent holder

18  may give notice to the public that its product is patented "either by fixing the word 'patent' or the

19  abbreviation 'pat.', together with the number of the patent . . . [or] an address of posting on the

20  Internet . . . that associates the patented article with the number of the patent."  35 U.S.C. § 287(a).

21  It is undisputed that Malico never marked its products with the '484 Patent designation.  Tr. of Dep.

22  of John Chang, Dkt. 99-13 at 6.  Malico contends, and defendants do not dispute, that its product

23  covered by the '484 patent was marked from 2001 to 2006 with the number of its earlier patent, U.S.

24  Patent Number 6,153,932.  *See* Flanders Damages Decl., Ex. K (Tr. of Dep. of John Chang), Dkt.

25  99-13 at 6; Declaration of John Chang in Support of Malico's Opposition to Defendants' Motion for

26  Summary Judgment (Chang Decl.), Dkt. 113-1, at ¶3.[4]  Beginning in 2006, Malico changed the

27
28

_____

[4] Plaintiff's administrative motion to seal portions of its opposition to defendants' motion for summary determination of no damages and the Chang Declaration and supporting exhibits is granted, as they contain confidential sales information sealable under Civil Local Rule 79-5.  *See* Dkt. 109.

No. C 11-04537-RS
ORDER

12

United States District Court
For the Northern District of California

marking of its product covered by the '484 patent to read "Int. Pat. XXXX," with the goal of notifying the public that it was covered by multiple patents internationally. *See id.*

Malico argues that marking its products with the '932 Patent, which is not a patent-in-suit, and with the phrase "Intl. Pat. XXXX" suffices as notice to the public, including defendants, that those products were covered by the '484 Patent. The statutory requirement, however, is that the marking specifically include the "number of the patent." 35 U.S.C. § 287(a). Neither of the markings Malico used gave defendants "constructive notice of *the asserted patent*." *Sentry Prot. Prods. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005). Malico provides no support for the notion that the markings it used can substitute for the specific markings required by the statute.

Due to Malico's "failure so to mark, no damages shall be recovered by" it prior to defendants' receipt of actual notice of infringement to the alleged infringer. 35 U.S.C. § 287(a); *see Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). In opposition to defendants' motion for summary judgment of no damages, Malico provided a declaration from Chang stating that in 2006, Cooler Master was a customer of Malico, and inquired about the change plaintiff had made to its products concerning the patent markings. Chang Decl. ¶4. Chang's declaration states, "Malico responded to Cooler Master that the change was made to address Malico's new patent (the '484 Patent). Thus, according to Malico, Cooler Master was given direct and actual notice that Malico's heat sink . . . was covered by . . . the '484 Patent." *Id.* For this proposition, the Chang Declaration relies on a previously unproduced exhibit, in the form of an email written in Chinese. *See id.*, Ex. 2. Defendants object that this portion of the Chang Declaration, including the attached exhibit to which it points, should be stricken as inadmissible. They also contend that Chang's summary of the email is inaccurate. As Cooler Master's objection is well taken, both paragraph 4 of the Chang Declaration and Exhibit 2 accompanying it must be stricken and excluded.[5] The only admissible evidence of the date Cooler Master received actual notice of infringement is the complaint first filed against it in the Western District of Washington on May 26, 2009.

---

[5] It is not necessary to address each and every objection defendants raise to the admissibility of paragraph 4 of, and Exhibit 2 to, the Chang Declaration. Exhibit 2 is inadmissible as it was not produced or identified during discovery nor properly authenticated.

**United States District Court**
For the Northern District of California

The parties proceed on the assumption that the only potentially infringing sales of Cooler Master's accused heat sinks are those that it made to LSI and those that occurred when LSI sold its devices containing Cooler Master's accused heat sinks as a component. Cooler Master has shown by undisputed evidence that LSI ceased using the accused Cooler Master heat sink as a component in its products as of March 2009, at least two months before Cooler Master received actual notice of the alleged infringement. *See* Flanders Damages Decl., Ex. F (LSI's Responses to Malico's Second Set of Interrogatories), Dkt. 99-8 at 4. Therefore, there is no evidence that Cooler Master made any sales of the accused devices after March of 2009. Damages for patent infringement may not be recovered "for any time period prior to compliance with the marking or actual notice requirements of" 35 U.S.C. Section 287(a). *Am. Med. Sys.*, 6 F.3d at 1537. As it is undisputed that Cooler Master did not sell any accused products after May 26, 2009, the date the record reflects that it was on actual notice of infringement of the '484 Patent, Cooler Master is entitled to a summary determination of no damages as a matter of law.

LSI, by contrast, had actual notice of infringement of the patent-in-suit as of March 17, 2008, and admits to continuing to sell the accused products through March of 2009. Malico provided a declaration from its counsel, John Whitaker, with accompanying letters from LSI's in-house counsel to Malico's outside counsel dated March 20, 2008, and March 17, 2008, respectively, acknowledging receipt of a letter from Malico referencing LSI's alleged infringement of the '484 Patent.[6] *See* Whitaker Decl., Exs. 1& 2, Dkt. 113-4, -5. The undisputed evidence demonstrates, therefore, that the earliest date LSI had actual notice of infringement of the '484 Patent is March 17, 2008, the earliest date of its response to Malico's infringement accusation letter. *See* Whitaker Decl., Ex. 2, Dkt. 113-5.

Theoretically, if LSI were found liable for infringement of the '484 Patent, Malico could recover damages based on the single year of LSI's sale of accused products from March 2008 through March 2009. Malico now argues that the damages to which it would be entitled in such a scenario should be calculated based on its lost profits. Malico forfeited the opportunity to recover damages based on lost profits, however, by failing to present during discovery any admissible

---

[6] The declaration only identifies two exhibits, a single letter and the settlement statement, but three exhibits have been filed with the Court.

United States District Court

For the Northern District of California

1    evidence of what those damages might be.  *See Crystal Semiconductor Corp. v. TriTech*

2    *Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) ("To recover lost profits, a patent

3    owner must prove a causal relation between the infringement and its loss of profits.") (internal

4    quotation omitted).

5    Malico did not disclose a lost profits theory of damages or any evidence in support of such a

6    theory through its Rule 26 disclosures or in its responses to any formal discovery.  In response to an

7    interrogatory demanding the basis on which it had claimed the right to recover damages, Malico

8    only conclusorily noted that its damages calculation would be computed in accordance with the

9    *Georgia Pacific* factors, which provide general guidance for calculating a reasonable royalty.  *See*

10   Flanders Damages Decl., Ex. H (Malico's Responses to Cooler Masters's Rogs), Dkt. 99-10 at 10;

11   *see also Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d. Cir.

12   1971).  Malico is therefore left with a largely inadmissible declaration from an employee as

13   discussed above which cannot compensate for its failure to disclose properly and timely a theory of

14   damages alongside factual evidence.  The complete lack of admissible evidentiary support for

15   Malico's late-disclosed lost profits theory is therefore fatal to its ability to recover such damages.

16   In light of that failure of proof, Malico now attempts to introduce new evidence through

17   declarations.  Exhibit 3 to the Whitaker Declaration is a settlement statement that Malico contends

18   evidences its timely disclosure of a lost profits theory of damages.  In addition, the Chang

19   Declaration contains an estimate of the damages to which Malico believes it is entitled based on a

20   lost profits theory.  It purports to recite information regarding Malico's sales history and production

21   capacity.  Based on the declaration's statements related to damages, Malico argues in its brief that it

22   has suffered damages of roughly $5 million.

23   Defendants object to the admissibility of Exhibit 3 to the Whitaker Declaration as well as to

24   paragraphs 2, and 6 through 11, of the Chang Declaration.  As to the settlement materials,any

25   "statement made during compromise negotiations about the claim" is inadmissible, as long as it is

26   not being offered for another purpose "such as proving a witness's bias or prejudice, negating a

27

28

United States District Court
For the Northern District of California

1  contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."[7]

2  *See* Fed. R. Evid. 408.  In any event, "discussing" a lost profits damages theory in the settlement

3  context would not remedy Malico's failure to disclose that theory and evidence supporting it during

4  formal discovery.

5      The challenged paragraphs of the Chang Declaration are factual assertions about Malico's

6  sales and production capacity.  Chang states that he has "reviewed Malico's sales records of its heat

7  sinks covered by the '484 Patent made to Cooler Master for the years 2003-2006" as well as "the

8  purchasing and sales information that Malico keeps."  Chang Decl. ¶¶ 2, 10.  He then proceeds to

9  recount purported sales figures and perform a rudimentary damages estimate based on his "best

10 calculation" of Malico's incremental profit margin on its patented products.  *Id.*

11     Cooler Master served discovery on Malico requesting the bases of its damages calculations,

12 to which Malico did not respond.  Having a declarant recite what purports to be Malico's sales

13 figures is no substitute for timely producing such responsive information during discovery.  Malico

14 may not overcome its failure to abide by the discovery rules by simply announcing for the first time,

15 in declaration form, the information it would like to introduce into evidence.  The challenged

16 paragraphs of the Chang Declaration must be excluded for the reason that Malico disclosed neither

17 its lost profits theory of damages nor documents evidencing its sales or production capacity during

18 discovery.

19     In addition, paragraphs 7, and 9 through 11, of the Chang Declaration must also be excluded

20 because they provide an opinion about how Malico's damages should be calculated without laying a

21 foundation for the declarant's personal knowledge of the matter as required by Federal Rule of

22 Evidence 602.  Chang does not indicate that he has any relevant knowledge or qualifications to

23 opine on this topic, nor does he identify what methodology he used or information he relied upon to

24 reach his conclusions.

25     Having failed to present any admissible evidence in support of a lost profits damages theory,

26 Malico cannot recover such damages.  That said, 35 U.S.C. § 284, provides that if LSI is liable to

27

28 [7] Indeed, ADR Local Rule 7-5(a)(2) makes explicit that "the contents of any written settlement
   conference statements" shall not be disclosed to the judge assigned to the matter or "[u]sed for any
   purpose . . . in any pending or future proceeding in this court."

United States District Court

For the Northern District of California

1   Malico for infringement of the '484 Patent, Malico shall be awarded "in no event less than a

2   reasonable royalty for the use made of the invention by the infringer, together with interest and costs

3   as fixed by the court." Reasonable royalty damages may be "found by a jury, [or] the court shall

4   assess them," but in either event they may be multiplied "up to three times the amount found or

5   assessed." *Id.* "The court may receive expert testimony as an aid to the determination of damages

6   or of what royalty would be reasonable under the circumstances." *Id.* If Malico were to prevail in

7   proving LSI was liable to it for infringing the '484 Patent, it would be limited to recovering

8   damages calculated as a reasonable royalty on infringing sales by LSI from March 2008 through

9   March 2009. Accordingly, the motion for a summary determination of no damages is granted in

10  part as to Cooler Master and denied in part as to LSI.

11        D.  Motion for Summary Judgment of Invalidity Due to Obviousness

12        Defendants move for summary judgment on the basis that Malico's '484 Patent is invalid

13  due to obviousness. They argue that both independent claims of the patent are obvious over prior

14  art Smithers and Marwah, neither of which were before the Examiner during the prosecution of the

15  '484 Patent. They further contend several other prior art references, Lo, Lin, and Liang, support the

16  common knowledge and inferences which would be drawn by one of ordinary skill in the art. In

17  support of their motion, defendants present documents from the '484 Patent's prosecution history as

18  well as a declaration from their technical expert, Dr. Carman, opining that while the '484 Patent

19  presents a good design solution to a known problem, it is not an invention, because it merely

20  combines elements of earlier devices in a predictable way that would have been obvious to one of

21  ordinary skill in the art. *See* Carman Decl. ¶ 23.

22        Malico's opposition relies primarily on attorney argument disagreeing with the conclusions

23  of Dr. Carman. The only evidence to which it points is a single paragraph of the Chang Declaration

24  submitted in opposition to Defendant's motion for summary determination of no damages, stating

25  that the volume of sales for Malico's devices covered by the earlier '932 Patent dropped

26  dramatically after the introduction of the new products covered by the '484 Patent.[8] *See* Declaration

27

28  [8] As noted in connection with the motion for summary determination of no damages, defendants
    have objected to several paragraphs of the Chang Declaration, including this one. For the reasons
    discussed below regarding that motion, defendants' objections are sustained. Accordingly, Malico

United States District Court
For the Northern District of California

of John Chang in Support of Malico's Opposition to Defendants' Motion for Summary Judgment (Chang Decl.), Dkt. 113-1, at ¶11.  Defendants have met their burden of presenting clear and convincing evidence of invalidity while Malico has failed to introduce any admissible evidence, let alone sufficient evidence, to create an issue of material fact as to obviousness.

i.    Obviousness Standard

"Obviousness is a question of law, premised on underlying factual determinations." *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 722-23 (Fed. Cir. 2002).  "Therefore, a district court properly may grant summary judgment on obviousness . . . only when the underlying factual inquiries present no lingering genuine issues." *Id.* at 723.  "An obviousness inquiry assesses 'the differences between the subject matter sought to be patented and the prior art' to ascertain whether 'the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'"[9] *Id.* at 725 (quoting 35 U.S.C. § 103(a)).  "The underlying factual inquiries are: (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *Id.* at 725-26 (internal quotation omitted).

In particular, the party "alleging invalidity must show prior art references which alone or combined with other references would have rendered the invention obvious to one of ordinary skill in the art at the time of invention." *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999).  "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 421 (2007).  "Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420.  "[T]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416.

_____

has not presented *any* admissible evidence in opposition to defendants' motion for summary judgment on invalidity.

[9]  Malico presents the incorrect legal standard, confusing obviousness with the related, but different, concept of whether a patent is anticipated by prior art.  A claim is only anticipated if every limitation of the claimed invention is found in a single prior art reference.  *See Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001).

"The party seeking patent invalidity based on obviousness must also show some motivation or suggestion to combine the prior art teachings." *Al-Site Corp.*, 174 F.3d at 1323-24. "One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR*, 550 U.S. at 419-20.

Given that patents are strongly presumed to be valid, *see* 35 U.S.C. § 282, however, "a defendant must show invalidity by facts supported by clear and convincing evidence." *Beckson Marine*, 292 F.3d at 725. As it is presumed "that the Examiner did his duty and knew what claims he was allowing," it follows that, "the challenger's burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application." *Al-Site Corp.*, 174 F.3d at 1323 (internal quotations omitted).

ii.    Analysis of Obviousness

Defendants' technical expert, Dr. Carman, declares that the claims of the '484 Patent are "invalid as obvious over Smithers alone or in the alternative in view of Marwah and/or Lin." Carman Decl. ¶ 39. Carman concludes that Smithers discloses every limitation of claim 1 except, arguably, "pads," although it inherently teaches and suggests the use of structures similar to pads. *Id.* ¶¶ 26, 30. In any event, he characterizes pads as a well-known technique to one of ordinary skill in the art, such that it would have been obvious to combine the use of pads with the teachings of Smithers. *See id.* ¶ 30.

Defendants, relying on Dr. Carman, conclude that each limitation of claim 1, other than pads, is disclosed by Smithers. *See also id.* at ¶¶ 28-29. While Smithers does not explicitly teach pads, such teaching is inherent in Smithers, defendants argue, because it refers to "pads" as a height adjustment where the resilient legs contact the top surface of the heat dissipater and, one of ordinary skill in the art, reading Smithers and looking at its figures, would understand that the material defining the bottom of the gap between the fins should be of the appropriate height to contact the resilient legs. *Id.* ¶ 30.

Even if Smithers does not explicitly teach pads, prior art Liang makes clear that heat sink dissipaters without pads were well known in the art. Defendants argue that generally, using pads to

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    allow for height adjustment was a well known technique in mechanical engineering.  This

2    contention is supported both by Dr. Carman's declaration and, the express teaching of prior art

3    Marwah, not presented to the Examiner during the prosecution of the '484 Patent, that pads can be

4    used to adjust for height differences in heat sinks.  *See id.* ¶ 31.  Dr. Carman opines that Marwah

5    "expressly teaches that pads can be used to accommodate for height differences."  *Id.*  Furthermore,

6    "it would be obvious to one having ordinary skill in the art to add pads (spacers), if needed, to the

7    top surface of the heat dissipater in the gaps . . . to accommodate different heights."  *Id.*

8         Defendants further argue that the "problem" to be solved by the '484 Patent, that

9    conventional heat dissipaters could not accommodate different heights, was well known at the time.

10   For example, it was identified explicitly in Lo.  *See Lo*, col. 1 ll.40-42 ("The prior art locking device

11   described above is only adapted for locking CPU packages of a fixed thickness.").  Common

12   knowledge of the problem at the time of the invention would motivate a person of ordinary skill in

13   the art to make an obvious modification to, or combination of, the teachings of the prior art Smithers

14   and Marwah to achieve what is covered by claim 1 of the '484 Patent.

15        Claim 2 is the same as claim 1, except that it requires recesses instead of pads.  Using

16   recesses as a height accommodation was well known in the art at the time and is disclosed by Lin.

17   *See* Carman Decl. ¶ 36; Lin, col. 3 ll. 8-10.  Defendants contend that a person of ordinary skill in the

18   art and of ordinary creativity would have combined Smithers with the recess technology of Lin to

19   accomplish claim 2.  *See* Carman Decl. ¶¶ 37-38.

20        Malico proclaims its disagreement with Dr. Carman's conclusions, but offers no technical

21   evidence to contradict them.  Contrary to Dr. Carman's opinion, Malico insists that Smithers does

22   not disclose every limitation of claim 1 of the '484 Patent.  For example, it disputes that the "curved

23   beam" in Smithers is structurally equivalent to the "resilient leg with bent" in the '484 Patent.  Yet,

24   "[a]ttorney argument is no substitute for evidence" and is not sufficient to create a genuine issue of

25   material fact.  *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1581 (Fed. Cir. 1989).  As Malico has

26   failed properly to "support [its] assertion[s] of fact" and to "address" defendants' "assertion of fact"

27   with evidence, the grant of summary judgment of invalidity for obviousness is appropriate.  Fed. R.

28   Civ. Proc. 56(e).

United States District Court

For the Northern District of California

1       The only evidence presented by Malico in opposition to the motion for summary judgment is

2   a single paragraph of the Chang Declaration stating that "demand for the product covered by the

3   '932 Patent has drastically diminished since the introduction of the product covered by the '484

4   Patent."  Chang Decl. ¶ 11.  Malico argues that because the hitherto successful patented invention

5   faced a negative competitive impact from the advent of the infringing product, the patented

6   invention must not have been obvious.  At the outset, that statement from Chang's declaration is not

7   admissible for the reasons noted above in the context of the damages motion.  In any event, it is

8   unclear how such sales numbers would prove nonobviousness.  Left unexplored, for example, is

9   whether Malico continued producing the device covered by the '932 Patent after it began making

10  the product covered by the '484 Patent.  "A highly successful product alone [is not enough to]

11  overcome a strong showing of obviousness."  *See Media Techs. Licensing v. Upper Deck Co.*, 596

12  F.3d 1334, 1339 (Fed. Cir. 2010).  Even if admissible, Chang's declaration regarding relative sales,

13  standing alone, is insufficient to defeat summary judgment.

14      The Carman Declaration, considered in conjunction with the Smithers and Marwah prior art,

15  neither of which were before the Examiner when he allowed the '484 Patent to issue, is clear and

16  convincing evidence of invalidity.  Defendants have met the high burden required to overcome the

17  presumption of validity accorded to the '484 Patent.  Malico, having failed to submit any admissible

18  evidence in opposition to the motion, has not raised a question of material fact appropriate for trial

19  as to whether the '484 Patent is invalid for obviousness.  Summary judgment of invalidity due to

20  obviousness is therefore appropriate.

21                    V.      CONCLUSION

22      Defendants' motion for summary judgment of invalidity due to obviousness is granted.

23  Even if the '484 Patent were valid, Malico's motion for partial summary judgment of infringement

24  would be denied for the reasons set forth above.  Defendants' motion to strike the photographs

25  presented by Malico as evidence in support of its partial motion for summary judgment of

26  infringement is granted.  Defendants' motion for summary determination of no damages is granted

27  with respect to Cooler Master and denied with respect to LSI.  A separate judgment will issue in

28  conjunction with this decision.

1        IT IS SO ORDERED.

2    Dated: 8/20/13

3                                            _____
                                             RICHARD SEEBORG
                                             UNITED STATES DISTRICT JUDGE
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California